FILED

2018 JUL 20 P 1: 55

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF
## VIRGINIA
## ALEXANDRIA

DANIEL J. PAWLOWSKI,

    Plaintiff,                        Case No. 1:18-cv-00626-CMH-JFA

-v-
U.S. DEPARTMENT OF EDUCATION;
BETSY DEVOS, in her official capacity
As Secretary of the U.S. Department of Education;
NAVIENT CORPORATION; NAVIENT
SOLUTIONS, INC.; EQUIFAX, INC.; EQUIFAX
INFORMATION SERVICES, LLC.; EXPERIAN
INFORMATION SOLUTIONS, INC.;
TRANSUNION, LLC; and Does 1-10,

    Defendants.

## FIRST AMENDED VERIFIED COMPLAINT

### I. INTRODUCTION

1. This is an action brought pursuant to the Fair Credit Reporting Act 15 U.S.C.

   §1681 ("FCRA"), which prohibits reporters from engaging in deceptive and unfair

   practices. Defendants are "furnisher of information" under the FCRA. Defendants

reported derogatory remarks to the Credit Reporting Agencies (hereinafter "CRA"). The FCRA also requires CRAs to report accurate information.

2. This is an action brought pursuant to the Fair Debt Collection Practices Act 15 U.S.C. §1692, et seq. ("FDCPA"), which prohibits collectors from engaging in deceptive and unfair practices. Plaintiff seeks damages and other relief.

3. This is also an action brought pursuant to breach of common law right to contract, and *ultra vires*. Even when not specified, though, the U.S. Uniform Commercial Code provides the opportunity to terminate a contract due to a fundamental breach—a failure to fulfill the terms of the contract so significant that it undermines the entire contract. A contract is based on the idea that parties must fulfill their agreed-upon duties in good faith, whether delivering goods, sending payment, or doing whatever is written in the contract. If that does not happen, the contract is no use and can be terminated.

4. As an additional breach of contract, this action is brought against EQUIFAX for its failures to protect and secure Plaintiff's personal identifying information ("PII"), including full name, social security number, date of birth, address and some driver's license numbers of Plaintiff and some 143 million similarly situated consumers in the United States.

## II.    JURISDICTION

1. Jurisdiction arises under 15 U.S.C. §1681 et seq., 15 U.S.C. §1692k, 28 U.S.C. §1331, and 28 U.S.C. §1337(a). Violations have occurred within one (1) year from the filing of this case.

2. Personal jurisdiction exists over Defendants as they had the necessary minimum contacts in this State and this suit arises out of their specific conduct with Plaintiff.

3. No jurisdiction herein shall annul, alter, or affect, or exempt any person from complying with State law. See 15 U.S.C. §1692n.

## III. VENUE

4. Venue is established as Defendants do business in this district, reside in this district and have the capacity to be sued in its common name. See 28 U.S.C. §1391(c)(2).

## IV.     PARTIES

5. Plaintiff Daniel J. Pawlowski (hereinafter "Plaintiff") is a consumer whose address is 401 Holland Lane, #316, Alexandria, VA 22315.

6. Defendant U.S. DEPARTMENT OF EDUCATION (hereinafter "DOE") is an agency of the United States. Defendant DOE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA. The Department is located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

7. Defendant Betsy DeVos (hereinafter "DEVOS") is the Secretary of Education. She is sued in her official capacity. The Secretary's official address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

8. Defendant NAVIENT CORPORATION (hereinafter "NC") is a loan management, servicing, and asset recovery company and is a Delaware corporation. Defendant NC is an entity who, regularly and in the course of business, furnishes information to one

or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. NC is located at P.O. Box 9635 Wilkes-Barre, PA 18773. NC is the direct or indirect owner of all of the stock of NAVIENT SOLUTIONS, INC. (hereinafter "NSI", formerly known as SALLIE MAE, INC.). NSI is located at 800 Prides Crossing, Newark, DE 19713. At all times material to this complaint, NC has been located and transacted business in this district, whether directly or through its subsidiaries. Defendant NC is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6).

There has been significant overlap between the corporate governance and management of NC and NSI. Specifically, many of the directors and officers of NSI have also been directors or officers of NC. For example, as of 2014, John Remondi served as President and Chief Executive Officer for both NC and NSI; John Kane served as Chief Operating Officer for both NC and NSI; Somsak Chivavibul served as Chief Financial Officer for both NC and NSI; Timothy Haynes served as Chief Risk Officer for both NC and NSI; and Stephen O'Connell served as Senior Vice President and Treasurer for both NC and NSI. As a result of the 2014 corporate reorganization, NC is currently the entity that contracts with the DOE for the servicing of federal student loans.

9. Defendant EQUIFAX, INC (hereinafter "EQUIFAX"), is a Delaware foreign corporation believed to be authorized to do, and doing business in the State of Virginia. Defendant EQUIFAX is a "consumer reporting agency," as codified at 15 U.S.C. §1681a(e). Defendant EQUIFAX principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. EQUIFAX LLC may be served through its

registered agent, Corporation Services Company, 211 E. 7th St., Suite 620, Austin,

TX 78701. EQUIFAX is a public corporation, trading in the New York Stock Exchange

as "EFX". EQUIFAX is the parent corporation of EQUIFAX LLC.

10.    Defendant EQUIFAX INFORMATION SERVICES, LLC (hereinafter "EQUIFAX

LLC") is a foreign corporation/limited liability company believed to be authorized to

do, and doing business in the State of California. Defendant EQUIFAX LLC is a

"consumer reporting agency," as codified at 15 U.S.C. §1681a(e).  Defendant

EQUIFAX LLC principal place of business is located at 1550 Peachtree Street, N.W.,

Atlanta, GA 30309. EQUIFAX LLC may be served through its registered agent,

Corporation Services Company, 211 E. 7th St., Suite 620, Austin, TX 78701.

EQUIFAX LLC is a provider of consumer credit reports and credit monitoring

programs; business of "assembling or evaluating consumer credit information." 15

U.S.C. § 1681a(f).

11.    Defendant EXPERIAN INFORMATION SOLUTIONS, INC., (hereinafter

"EXPERIAN") is an Ohio Corporation with its principal place of business located at

475 Anton Boulevard, Costa Mesa, CA 92626. EXPERIAN is a provider of consumer

credit reports and credit monitoring programs. Defendant EXPERIAN is a "consumer

reporting agency," as codified at 15 U.S.C. §1681a(e).

12.    Defendant TRANSUNION, LLC (hereinafter "TRANS") is a Delaware Limited

Liability Company, with its principal place of business at 555 W. Adams St., 6th Fl.,

Chicago, IL 60661. Defendant TRANS is a "consumer reporting agency," as codified

at 15 U.S.C. §1681a(e).  TRANS is a provider of consumer credit reports and credit

monitoring programs; business of "assembling or evaluating consumer credit

information." 15 U.S.C. § 1681a(f).

13.   Defendants Does 1-10 are currently unknown to plaintiff. Complaint will be amended when facts are discovered regarding unknown parties.

## V.   STATEMENT OF CLAIM

14. On or about July 2015 and August 2016, Plaintiff sent Defendant DOE a Notice of Dispute, demanding validation of an alleged account with Defendant DOE. See **Exhibit "A"**.

15. On or about July 2015 and August 2016, Plaintiff sent Defendant NC a Notice of Dispute, demanding validation of an alleged account with Defendant DOE.

16. On or about July 2015 and August 2016, Plaintiff sent Defendants Experian, Equifax and TransUnion a Notice of Dispute of the fraudulently created accounts with Defendant DOE. See **Exhibit "B"**.

17. Defendant DOE reported inaccurate derogatory information about Plaintiff to one or more consumer reporting agencies.

18. On or about August 2016 and September 2017 Plaintiff sent a written request to Defendants Experian, Equifax and TransUnion, disputing the inaccurate information they reported to the CRAs. See **Exhibit "C"**.

## VI. ALLEGATIONS

19. Plaintiff brings this action on his own behalf.

20. The Defendants are reporting derogatory and inaccurate information about Plaintiff to one or more consumer reporting agencies (credit bureaus) as defined by 15 U.S.C. § 1681a.

21. Plaintiff has disputed the accuracy of the derogatory and inaccurate information reported by the Defendants to the Consumer Reporting Agencies via certified mail.

22. Defendants have not responded to Plaintiff's letters of dispute by providing evidence of the alleged debt to Plaintiff nor to the Consumer Reporting Agencies.

23. Defendants have not provided notice of this disputed matter to the credit bureaus and is therefore in violation of 15 U.S.C. § 1681s-2 which requires such notice.

24. Defendants DOE and Devos has not disclosed that it did not loan any of its money to Plaintiff.

25. Defendant EQUIFAX failed to protect sensitive information in its records regarding Plaintiff.

## VII.   CAUSE OF ACTION

### COUNT 1
### VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C.§1681
### BY DEFENDANTS DOE and DEVOS

26. All above paragraphs are incorporated herein.

27. Section 623(a) of the FCRA describes the duties of furnishers to provide accurate information to CRAs. Section 623(a)(1)(B) prohibits furnishers from providing information relating to a consumer to any CRA if (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.

28. Section 623(b)(1) of the FCRA requires furnishers of information to CRAs to conduct an investigation when the furnisher receives a notice of dispute from a CRA in accordance with the provisions of Section 611(a)(2) of the FCRA, 15 U.S.C.

§1681i(a)(2). Defendants are required, under the Fair Credit Reporting Act, to conduct the investigation and notify the consumer of the results within 30 days of the request. See Section 623a(8)(E) [15 U.S.C. §1681a(8)(E)]. Defendant's response was inadequate to comply with this requirement. Plaintiff has received no evidence that the furnisher (Defendant DOE, ultimately DEVOS) has complied with this requirement.

29. On or about August 2016 and September 2017, Defendants reported inaccurate derogatory information to one or more consumer reporting agencies (credit bureaus) as defined by 15 U.S.C. §1681a, stating:

"_____

_____.".

30. Defendants reported accounts to the credit reporting agencies that do not belong to Plaintiff.

31. On or about August 2016 and September 2017 Plaintiff sent a written request to Defendants, under the Fair Credit Reporting Act, disputing the information and demanding that Defendants investigate the accuracy of the derogatory information that it reported. See **Exhibit "A"**.

32. Section 623(a)(3) of the FCRA concerns the reporting of information to consumer reporting agencies once the consumer has notified the furnisher that information is disputed. That section states that when a consumer disputes the completeness or accuracy of any information furnished to a consumer reporting agency, the information in question may not then be furnished without notice that it

is disputed by the consumer. That provision addresses the furnisher's obligation only when the furnisher continues to report disputed information. The statute is silent on the matter of the furnisher ceasing to report information while it is investigating the dispute. It is thus the opinion of the Commission staff that a furnisher temporarily ceases to report disputed information while it investigates the matter, and then either (1) corrects the information if its investigation results in agreement with the consumer or (2) reports the item as disputed by the consumer where that is the result of the investigation, would comply with Section 623(a).[1]

33.    Under section 623(a)(3), after receiving a notice of dispute from a consumer, Furnishers are required to meet a disclosure requirement by providing a notice of dispute to the CRAs within a timely manner. However, Defendants here failed to meet this condition of disclosure by not placing a "notice of dispute" on Plaintiff's account within the (30) day time period. (See **Exhibit "B"** Credit Reports)

34. Due to the securitization process, Defendants are not holders in due course, and therefore cannot have incurred a loss, and therefore reported inaccurate derogatory information, which is *fraud in the factum*.

> What banks do is to simply reclassify their accounts payable items arising from the act of lending as "customer deposits", and the general public, when receiving payment in the form of a transfer of bank deposits, believes that a form of money had been paid into the bank.
> The "lending" bank records a new "customer deposit" and informs the "borrower" that funds have been "deposited" in the borrower's account. Since neither the borrower nor the bank actually made a deposit at the bank – nor, in connection with this transaction, anyone else for that matter, it remains necessary to analyze the legal aspects of bank operations. In particular, the legality of the act of reclassifying bank liabilities (account payable) as fictitious consumer deposits requires further, separate analysis. This is all the more so, since no law, statute or

---

[1] https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-harvey-12-23-97

bank regulation actually grants banks the right (usually considered a sovereign prerogative) to create and allocate the money supply. Further, the regulation that allows only banks to conduct such creative accounting (namely the exemption from the Client Money Rules) is potentially being abused through the act of "renaming" the bank's own accounts payable liabilities as "consumer deposits" when no deposits had been made, since this is also not explicitly referred to in the banks' exemption from the Client Money Rules, or in any other statutes, laws or regulations, for that matter.

So how is it that the borrower feels that the bank's obligation to make funds available are being met? (If indeed they are being met). This is done through the one, small but crucial accounting change that does take place on the liability side of the bank balance sheet in Step 2: the bank reduces its 'account payable' item by the loan amount, acting as if the money had been disbursed to the customer, and at the same time it presents the customer with a statement that identifies this same obligation of the bank to the borrower, but now simply re-classified as a 'customer deposit' of the borrower with the bank.

The bank, having 'disbursed' the loan, remains in a position where it still owes the money. In other words, the bank does not actually make any money available to the borrower: No transfer of funds from anywhere to the customer or indeed the customer's account takes place. There is no equal reduction in the balance of another account to defray the borrower. Instead, the bank simply re-classified its liabilities, changing the 'accounts payable' obligation arising from the bank loan contract to another liability category called 'customer deposits'.

While the borrower is given the impression that the bank had transferred money from its capital, reserves or other accounts to the borrower's account (as indeed major theories of banking, the financial intermediation and fractional reserve theories, erroneously claim), in reality this is not the case. [2]

35. 15 U.S.C. §1681a (8)(E) states in relevant part:

**(E)Duty of person after receiving notice of dispute** After receiving a notice of dispute from a consumer pursuant to subparagraph (D), the person that provided the information in dispute to a consumer reporting agency shall—
**(i)**
conduct an investigation with respect to the disputed information;
**(ii)**
review all relevant information provided by the consumer with the notice;
**(iii)**
complete such person's investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 1681i(a)(1) of this title within which a consumer reporting agency would be

---

[2] https://www.sciencedirect.com/science/article/pii/S1057521914001434

required to complete its action if the consumer had elected to dispute the information under that section; and

**(iv)**

if the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the person furnished the inaccurate information of that determination and provide to the agency any correction to that information that is necessary to make the information provided by the person accurate.

36. Defendants have continued to report inaccurate information, or failed to report true information, to the CRAs even after receiving notice of dispute from Plaintiff. The CRAs contacted Defendants (Exhibit "B"), and Defendants failed to report the dispute within 30 days. The inaccurate information that DOE reported, inter alia, was an amount due of $_____ (Equifax); $_____ (Experian); $_____ (TransUnion). The amount reported should be 0.00.

37. Section 609(c)(2)(E) states: "a consumer reporting agency is not required to remove accurate derogatory information from a consumer's file, unless the information is outdated under section 605 or cannot be verified." However, since Plaintiff challenged Defendants to verify, and they did not, that means all financial institutions and credit reporting agencies concerned with Plaintiff's account are required to remove any derogatory information. It cannot be deemed "accurate" if it cannot be "verified". If it cannot be verified, then it is required to be removed, according to the FCRA.

38. FCRA in 15 U.S.C. 1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but

such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

39.     The definition of "account" clearly does not include an account such as a

student loan account but does include a demand deposit account, savings deposit

or other asset account which is wholly different. The Defendant here was

attempting to collect on an alleged account with DOE where Plaintiff never had any

such account.


## COUNT 2
## VIOLATION OF FAIR CREDIT REPORTING ACT 15
## U.S.C.§1681s-2(b) BY DEFENDANT NC

40. All above paragraphs are incorporated herein.

41. Defendant NC is required to conduct a meaningful investigation of an alleged

debt when requested to do so by a consumer.

42. Defendant NC, by not conducting a meaningful investigation, or an

investigation at all, constitute violations of Section 623(b) of the FCRA, 15 U.S.C.

§1681s-2(b).

43. Consumers can maintain a private action against furnishers of information

under Section 1681s-2(b). See *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d

918 (N.D. Ill. 2000); *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d

1296 (D.N.M. 2000); *Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D.Tex.2000).

## COUNT 3
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692e(8)
## BY DEFENDANTS DOE and NC

44. All above paragraphs are incorporated herein.

45. In connection with the collection of a debt, Defendants DOE and NC, directly or indirectly, used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e, including failure to communicate to the CRA to which it reported a debt that the debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. §1692e(8).

46. Defendant DOE has attempted to collect on false accounts that do not belong to Plaintiff.

## COUNT 4
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692, et seq.
## BY DEFENDANT NC

47. All above paragraphs are incorporated herein.

48. Plaintiff is an unsophisticated consumer.

49. Defendant is a debt collector and has violated the FDCPA.

50. Defendant engaged in unfair practices and a wrongful campaign to collect alleged indebtedness from Plaintiff, which Defendant knew or actively avoided knowing was not due from Plaintiff and ignored Plaintiff's disputes as to the collection account and Defendant further reported false credit reporting and communications to the CRAs and attributed said information to Plaintiff in violation of the FDCPA, 15 U.S.C. §1692f. Defendant continues to report accounts that do not belong to Plaintiff.

51. Defendant has engaged in a pattern of conduct designed to harass and abuse Plaintiff in violation of the FDCPA, 15 U.S.C. §1692d.

52. The FDCPA is a strict liability statute.

53. Alternatively, Defendant willfully, or alternatively, violated the FDCPA.

## COUNT 5
## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA),
## 15 U.S.C. §1681e(b)
## BY DEFENDANTS EXPERIAN and TRANS

54. All above paragraphs are incorporated herein.

55. Defendants failed to adopt and follow "reasonable procedures" to assure the maximum possible accuracy of Plaintiff's consumer credit and other personal information, as required by the FCRA, which they compiled, used and manipulated, in order to prepare consumer reports, credit scores, risk factor/denial codes and other economic and prediction data evaluations.

56. Defendants have continually added, stored, maintained and disseminated personal and credit information, in consumer reports they each prepared and issued, about the Plaintiff which was inaccurate, false, erroneous and misleading despite notice from the Plaintiff that such information was inaccurate.

57. Defendants have willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681e(b), on multiple occasions.

## COUNT 6
## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA),
## 15 U.S.C. §1681i(a)
## BY DEFENDANTS EXPERIAN and TRANS

58. All above paragraphs are incorporated herein.

59. Plaintiff advised Defendants, through the furnishers and directly, on multiple occasions, of the false data and demanded that the data be removed from their

consumer reports and data files.

60. Defendants failed to properly investigate/reinvestigate Plaintiff's disputes and Defendants continued to prepare and publish false consumer reports.

61. Defendants and furnishers (Defendants DOE and NC) exchanged information about Plaintiff's disputes through their investigation/reinvestigation and CDV/ACDV/UDF/AUDF processes.

62. Defendants and the furnishers were very aware of Plaintiff's disputes, as well as their inadequate and illegal investigation/reinvestigation, and the furnishers' responses to the numerous and varied contacts and their collective decision to leave disputes, false data as attributable to Plaintiff.

63. Defendants failed to use reasonable procedures to investigate/reinvestigate Plaintiff's disputes and, likewise, took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

64. Defendants failed to take necessary and reasonable steps to prevent further inaccuracies from entering Plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by Defendants and relayed for further use, reliance and publication by their subscribers.

65. Defendants failed to adopt and follow reasonable procedures to assure the proper investigation/reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports and as contained in their consumer reporting data-bank, as required by the FCRA.

66. Defendants have willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681i(a), on multiple occasions.

## COUNT 7
## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA),
## 15 U.S.C. §1681i(c)
## BY DEFENDANTS EXPERIAN and TRANS

67. All above paragraphs are incorporated herein.

68. Defendants failed to employ reasonable procedures to mark as disputed the various accounts contested by Plaintiff and which appeared in Plaintiff's consumer credit files and reports and to notify third parties, upon those inquiries, of the disputed nature of the account reporting.

69. Defendants willfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681i(c).

## COUNT 8
## BREACH OF CONTRACT-FRAUD
## BY DEFENDANTS DOE and DEVOS

70. All above paragraphs are incorporated herein.

71. In making a valid claim for collection of a debt, a creditor must have invested its own money in order to have standing. Money must have changed hands from the creditor to the debtor.

72. In the instant case, the Defendants did not provide any of its own money to Plaintiff.

73. Defendants have breached the alleged contract by not disclosing the fact that it will/did not use its own money, committing *ultra vires*. This act constitutes fraud.

Fraud vitiates the most solemn contract.

## COUNT 9
## BREACH OF CONTRACT-NEGLIGENCE
## BY DEFENDANT EQUIFAX

74. All above paragraphs are incorporated herein.

75. On September 7, 2017, Defendant publicly acknowledged a cybersecurity incident ("Data Breach") that has potentially impacted approximately half of all U.S. consumers who have credit histories. Defendant admitted that it discovered this data breach on July 29, 2017, and that the unauthorized access to its files, including Plaintiffs' PII, started in mid-May 2017.

76. Rather than timely disclose its data breach, Defendant waited almost six (6) weeks to publicly disclose the occurrence. In the interim, three EQUIFAX executives sold some $1.8 million of EQUIFAX stock. These executives include Chief Financial Officer John Gamble, who sold approximately $946,000 worth of EQUIFAX stock on August 1, 2017; President of United States Information Solutions Joseph Loughran, who sold approximately $584,000 of EQUIFAX stock, also on August 1, 2017; and President of Workforce Solutions Rodolfo Ploder, who sold approximately $250,000 of EQUIFAX stock on August 2, 2017.

77. Upon accepting and storing PII of Plaintiff in its computer systems and on its networks, Defendant undertook and owed a duty to Plaintiff to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Defendant knew that the PII was private and confidential and should be protected as private and confidential.

78. Defendant owed a duty of care not to subject Plaintiff, along with his PII, to an unreasonable risk of harm because he was a foreseeable and probable victim of an inadequate security practices.

79. Defendant owed numerous duties to Plaintiff, including the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

    b. To protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

    c. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

80. Defendant also breached its duty to Plaintiff to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, Defendant failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiffs', misuse the PII and intentionally disclose it to others without consent.

81. Defendant knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Defendant knew about the previous data breaches at EQUIFAX.

82. Defendant knew, or should have known, that their data systems and networks

did not adequately safeguard Plaintiff's PII.

83. Defendant breached its duties to Plaintiff by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs'.

84. Because Defendant knew that a breach of its systems would damage millions of individuals, including Plaintiff, Defendant had a duty to adequately protect their data systems and the PII contained therein.

85. Defendant has a special relationship with Plaintiff. Plaintiffs' willingness to entrust Defendant with his PII was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and the PII it stored on them from attack.

86. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiffs' PII and promptly notify him about the data breach.

87. As a result of the EQUIFAX Data Breach, Plaintiffs' PII has been exposed to criminals for misuse. The injuries suffered by Plaintiff, or likely to be suffered by Plaintiff as a direct and proximate cause and result of the EQUIFAX Data Breach include:

    a.  unauthorized use of his PII;

    b.  theft of his personal and financial information;

    c.  costs associated with the detection and prevention of identity theft and unauthorized use of his financial accounts;

    d.  damages arising from the inability to use his PII;

    e.  loss of use of and access to his account funds and costs associated with inability to obtain money from his account or being limited in the amount of money he was permitted to obtain from his account, including missed payments on bills and loans, late charges and fees, and adverse effects on his credit including decreased credit scores and adverse credit notations;

    f.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

    g.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by his PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' information on the Internet black market;

    h.  damages to and diminution in value of his PII entrusted to Defendant for the sole purpose of purchasing products and services from Defendant; and

    i.  the loss of Plaintiffs' privacy.

88. Defendants' negligence may have contributed to the false accounts that Defendants claim to belong to Plaintiff.

89. Through Defendant's acts and omissions described in this Complaint, including

Defendant's failure to provide adequate security and its failure to protect PII of

Plaintiffs' from being foreseeably captured, accessed, disseminated, stolen and

misused, Defendant unlawfully breached its duty to use reasonable care to

adequately protect and secure PII of Plaintiffs' during the time it was within

Defendant's possession or control.

90. The law further imposes an affirmative duty on Defendant to timely disclose the

unauthorized access and theft of the PII to Plaintiff so that Plaintiff can take

appropriate measures to mitigate damages, protect against adverse

consequences, and thwart future misuse of his PII.

91. Defendant breached its duty to notify Plaintiff of the unauthorized access by

waiting many months after learning of the Data Breach to notify Plaintiff and then

by failing to provide Plaintiff information regarding the Data Breach until September

2017. To date, Defendant has not provided sufficient information to Plaintiff

regarding the extent of the unauthorized access and continues to breach its

disclosure obligations to Plaintiff.

92. Plaintiff brings this action to remedy these harms on behalf of himself, whose

PII was accessed during Defendant's data breach. Plaintiff seeks the following

remedies, among others: statutory damages under the FCRA, FDCPA and state

law causes of action, reimbursement of out-of-pocket losses, other compensatory

damages, further and more robust credit monitoring services with accompanying

identity theft insurance, and injunctive relief including an order requiring Defendant

to implement improved data security measures.

93. Plaintiff did not contribute to the Data Breach and subsequent misuse of his PII

as described in this complaint.

## COUNT 10
## NEGLIGENCE
## BY ALL DEFENDANTS

94. All above paragraphs are incorporated herein.

95. Defendants owed duties of reasonable care to Plaintiff.

96. Defendants failed to exercise reasonable care and prudence in the reporting and collection of the disputed account, each subsequent reporting and re-reporting, the handling and reinvestigation of data about Plaintiff, and attempted collection of the subject accounts, all made the subject of this lawsuit, and which consequently caused damages to Plaintiff.

## COUNT 11
## DEFAMATION
## BY ALL DEFENDANT

97. All above paragraphs are incorporated herein.

98. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless disregard for the truth of the matters asserted.

99. Defendants' publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress and mental anguish to Plaintiff.

100.  Defendants were notified of inaccuracies by Plaintiff, however, the Defendants continued to issue and/or publish report(s) to third parties which contained inaccurate information about Plaintiff.

101. Defendants have, with willful intent to injure and/or maliciously, defamed Plaintiff.

## VIII.   RELIEF SOUGHT

### A. INJUNCTION FOR VIOLATIONS OF THE FDCPA and FCRA

102. This Court is authorized to issue a permanent injunction to ensure that: (a) Defendants, all of them, will not continue to violate, the FCRA, and the FDCPA and (b) Defendants DOE and NC will not continue to violate the FDCPA.

### B.   EQUITABLE RELIEF FOR VIOLATIONS OF THE FCRA, CIVIL PENALTIES FOR VIOLATIONS OF THE FCRA

103. Section 621 of the FCRA, 15 U.S.C. §1681s, authorizes this Court to award monetary civil penalties of not more than $2,500 per violation, per month, for each violation of Sections 623(a)(3) and 623(b) of the FCRA.

104. Each instance in which Defendants have violated Sections 632(a)(3) an 623(b) of the FCRA constitutes a separate violation of the FCRA for which Plaintiff seeks monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. §1681s.

105. Defendants have engaged in knowing violations of the FCRA as described above, which constitute a pattern or practice of violations.

### C.   CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

106. Defendants DOE and NC have violated the FDCPA as described above, with knowledge or knowledge fairly implied on the basis of objective circumstances.

FIRST AMENDED VERIFIED COMPLAINT  Page 23 of 26

107. Each instance within five (5) years preceding the filing of this Complaint, in which Defendants have failed to comply with the FDCPA in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

108. Section 814(a) of the FDCPA, 15 U.S.C. §1692l, and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. §2461, as amended, authorize this Court to award monetary civil penalties of not more than $11,000 for each violation of the FDCPA.

## VIII. PRAYER FOR DAMAGES

**WHEREFORE,** plaintiff prays that this Court enter a judgment for plaintiff, against Defendants by:

(a) Enter a permanent injunction to prevent future violations of the FDCPA and FCRA by Defendants;

(b) adjudging that Defendants violated FDCPA and FCRA;

(c) Award such relief as the Court finds necessary to redress injury to Plaintiff resulting from Defendants' violations of the FDCPA and FCRA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill- gotten gains;

(d) Award Plaintiff monetary civil penalties for each violation of the FDCPA and FCRA as alleged in this Complaint, except as to violations of Section 623(a)(1), 15 U.S.C. §1681s-2(a)(1);

(e) Award Plaintiff the costs of bringing this action, as well as other and additional

relief as the Court may determine to be just and proper.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable. Respectfully submitted this __20th__ day of __July__, 2018.

Daniel J. Pawlowski, Plaintiff, In Pro Per

## **VERIFICATION**

STATE OF VIRGINIA

COUNTY OF ALEXANDRIA

I have read the foregoing Complaint, and knows its contents.

I am the Plaintiff, a party to this action, and am authorized to make this verification. The matters stated in the foregoing document are true and of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Virginia that the foregoing is true and correct.

_____

Daniel J. Pawlowski, Plaintiff, In Pro Per

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_____ DIVISION

Daniel Pawlowski
_____
                Plaintiff(s),

        v.

U.S. DoE et al
_____
                Defendant(s).

Civil Action Number: 1:18-cv-00626-
                      CMH-JFA

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of _amended compliant_ .
                                                              (Title of Document)

Daniel Pawlowski
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: 20 July 2018 (Date)

                                OR

The following attorney(s) prepared or assisted me in preparation of _amended compliant_
                                                                      (Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)